# EXHIBIT A

CITATION

THE STATE OF TEXAS

**CAUSE NO. D-1-GN-07-002673**

SONYA MITCHELL , Plaintiff

vs.

DAVOL, INC. A SUBSIDIARY OF C.R. BARD, INC. , Defendant

TO: DAVOL, INC., A SUBSIDIARY OF C.R. BARD, INC.
100 SCOKANOSSETT CROSSROAD
CRANSTON, RHODE ISLAND 02920

Defendant, in the above styled and numbered cause:

**YOU HAVE BEEN SUED. You may employ an attorney. If you or your attorney do not file a written answer with the clerk who issued this citation by 10:00 A.M. on the Monday next following the expiration of twenty days after you were served this citation and petition, a default judgment may be taken against you.**

Attached is a copy of the **ORIGINAL PETITION** of the PLAINTIFF in the above styled and numbered cause, which was filed on AUGUST 24, 2007 in the 250TH JUDICIAL DISTRICT COURT of Travis County, Austin, Texas.

ISSUED AND GIVEN UNDER MY HAND AND SEAL of said Court at office, September 13, 2007.

REQUESTED BY:
DANIEL W ANDREWS
707 WEST 34TH ST
AUSTIN, TX 78705-1294
BUSINESS PHONE:(512)454-3751
FAX:(512)451-5857

DISTRICT COURT OF TRAVIS COUNTY TEXAS

AMALIA RODRIGUEZ-MENDOZA
Travis County District Clerk
Travis County Courthouse
1000 Guadalupe, P.O. Box 679003 (78767)
Austin, Texas 78701

By Armanda Martinez
ARMANDA MARTINEZ, Deputy

RETURN

Came to hand on the 14th day of September, 2007 at 4 o'clock P M., and executed at ______ within the County of ______ on the ____ day of ______, ______, at ______ o'clock ___M., by delivering to the within named ______, each in person, a true copy of this citation together with the TRAVIS COUNTY ORDER DESIGNATING CASES WHERE FILINGS ARE TO BE ELECTRONICALLY FILED AND ELECTRONICALLY SERVED AND SETTING FORTH CERTAIN REQUIREMENTS IN SUCH CASES accompanying pleading, having first attached such copy of such citation to such copy of pleading and endorsed on such copy of citation the date of delivery.

Service Fee: $ ______

Sworn to and subscribed before me this the ______

Certified Article Number
7160 3901 9849 4536 8733
SENDERS RECORD

Notary Public, THE STATE OF TEXAS

______
Sheriff / Constable / Authorized Person

By: ______

______
Printed Name of Server

______ County, Texas

D-1-GN-07-002673 SERVICE FEE NOT PAID **D01 - 20965**

☐ Original ☐ Service Copy

DELIVERED
ON 9/1/07
BY S. Thomas
SCH-1224

Filed
07 August 24 A10:03
Amalia Rodriguez-Mendoza
District Clerk
Travis District

CAUSE NO. D-1-GN-07-002673

| | | |
|---|---|---|
| SONYA MITCHELL | § | IN THE DISTRICT COURT |
| | § | |
| v. | § | TRAVIS COUNTY, TEXAS |
| | § | |
| DAVOL, INC., A SUBSIDIARY OF C.R. BARD, INC. | § | 250th JUDICIAL DISTRICT |

**PLAINTIFF'S ORIGINAL PETITION**

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, SONYA MITCHELL, plaintiff herein, complaining of DAVOL, INC., A SUBSIDIARY OF BARD, INC. and for cause of action would show unto the court as follows:

**I.**

Discovery should proceed in this cause under Level II.

The incident made the basis of this suit occurred in Austin, Travis County, Texas.

Plaintiff is a resident and citizen of Austin, Travis County, Texas.

Defendant DAVOL, INC., A SUBSIDIARY OF C.R. BARD, INC. can be served with process herein by serving it's registered agent, CT Corporation System, 350 North St. Paul Street, Dallas, Texas 75201

**II.**

It has become necessary to bring this lawsuit because of a surgical procedure wherein a Bard Kugel Composix mesh patch was surgically implanted in plaintiff on August 24, 2005. The surgery, performed in Austin, Texas, was for treatment of an incision hernia. After the defendant's mesh patch was placed in plaintiff's abdomen, it failed and plaintiff began to suffer from very severe abdominal pain. She required a follow up surgery on May 25, 2006, wherein defendant's patch was removed.

Defendant's mesh patch was defectively manufactured and proximately caused plaintiff's personal injuries and damages.

III.

Plaintiff alleges that the amount in controversy in within the jurisdictional limits of this court.

WHEREFORE, PREMISES CONSIDERED, plaintiff prays that defendant be cited to appear and answer herein, and that upon final hearing, she have judgment for her damages, including pre-judgment and post-judgment interest, that she recover her costs, that she have such other and further relief, at law or in equity, to which she may show herself justly entitled.

Respectfully submitted,

BYRD DAVIS FURMAN, L.L.P.

Daniel W. Andrews
State Bar No. 01240950
dandrews@byrddavis.com
707 W. 34th Street
Austin, Texas 78705
Telephone: 512/454-3751
Facsimile: 512/451-5857

**FILE NO. 121,012**

**TRAVIS COUNTY ORDER DESIGNATING CASES WHERE FILINGS ARE TO BE ELECTRONICALLY FILED AND ELECTRONICALLY SERVED AND SETTING FORTH CERTAIN REQUIREMENTS IN SUCH CASES**

Filed in The District Court of Travis County, Texas
FEB 28 2007
At 12:__ M.
Amalia Rodriguez-Mendoza, Clerk

Upon the Court's own motion in accordance with the Local Rules of the Travis County District Courts Concerning the Electronic Filing of Court Documents.

1. **DESIGNATION OF TEXASONLINE E-FILE CASE.**
IT IS HEREBY ORDERED that, henceforth, the following types of cases filed in the District Courts of Travis County, Texas, shall be and they are designated TexasOnline E-File cases:

**Asbestos Related Injury**
**Home Equity Forclosures**
**Negligence**

2. **ELECTRONIC SERVICE.**
IT IS FURTHER ORDERED that, in TexasOnline E-File cases, each party will register with TexasOnline for receipt of electronic service and those copies of each filing will be electronically served on all parties in the case.

3. **LIMITATION ON DISCOVERY FILINGS.**
IT IS FURTHER ORDERED that, in TexasOnline E-File cases, only the certificates of serving discovery requests and responses shall be E-filed; neither the request nor responses shall be filed nor need be filed.

4. **NO PAPER FILINGS RECEIVED.**
IT IS FURTHER ORDERED that the District Clerk shall not receive any petitions, applications, or pleadings whatsoever in TexasOnline E-File cases in paper form, except for filings by pro se parties or parties granted a waiver by the court. If the District Clerk receives a paper filing in a TexasOnline E-File case, the Clerk is ORDERED to return the paper filing to the purported filer with a notification that the case is to be E-filed through TexasOnline and that no paper filings can be received, file-stamped, or scanned.

5. **NOTICE OF ORDER**
IT IS FURTHER ORDERED that the District Clerk shall enter a copy of this order in all cases to which it applies and send notice to all parties in TexasOnline E-File cases, whether original defendants, cross defendants, or otherwise, advising of this order and of the requirements of the Travis County Local Rules of the District Courts Concerning the Electronic Filing of Court Documents. Such notice may be sent by including it with citation issued to any party or, if no citation is to be issued, then by any method specified in Rule 21a, Texas Rules of Civil Procedure.

6. **SHOW CAUSE OBJECTION**
If any party objects to such filing requirements, that party shall file a written objection within 30 days of the date of the notice of order and set the matter for a hearing before Judge John K. Dietz to show cause why the electronic filing requirement is unduly burdensome in the particular case pursuant to Rule 15.3(b), Local Rules of Civil Procedure and Rules of Decorum. Hearings should be set with the 250th District Court and will be held Fridays of jury weeks at 11:00 a.m.

SIGNED THIS 28th DAY OF February, 2007.

John K Dietz
The Honorable John K. Dietz
Local Administrative Judge

THE LAWYER REFERRAL SERVICE OF CENTRAL TEXAS

*A Non-Profit Corporation*

# IF YOU WANT THE ADVICE OF A LAWYER AND DON'T KNOW ONE, YOU MAY WISH TO CALL THE LAWYER REFERRAL SERVICE

## 512-472-8303

**866-303-8303 (toll free)**

**Weekdays 8:30 am to 5:00 pm**
**$20.00 for first half hour attorney consultation**
**(free consultations for personal injury, malpractice, worker's compensation, bankruptcy, and social security disability)**

This service is certified as a lawyer referral service as required by the State of Texas under Chapter 952, Occupations Code. Certificate No. 9303

# SI USTED NECESITA EL CONSEJO DE UN ABOGADO Y NO CONOCE A NINGUNO PUEDE LLAMAR A LA REFERENCIA DE ABOGADOS

## 512-472-8303

**866-303-8303 (llame gratis)**

**Abierto de lunes a viernes de 8:30 am-5:00 pm**
**$20.00 por la primera media hora de consulta con un abogado**
**(la consulta es gratis si se trata de daño personal, negligencia, indemnización al trabajador, bancarrota o por incapacidad del Seguro Social)**

This service is certified as a lawyer referral service as required by the State of Texas under Chapter 952, Occupations Code. Certificate No. 9303

c

Thank you for using Return Receipt Service

RETURN RECEIPT REQUESTED
USPS MAIL CARRIER
DETACH ALONG PERFORATION

DAVOL, Inc., a subsidiary of C.R. BARD, INC.
Officer or Authorized Agent
Crossroad

Thank you for using Return Receipt Service

Thomas Process
Scott L Thomas
809 Rio Grande Street
Suite 103
Austin, TX 78701

PLACE STICKER AT TOP OF ENVELOPE TO THE RIGHT OF RETURN ADDRESS. FOLD AT DOTTED LINE

**CERTIFIED MAIL**

7160 3901 9849 4536 8733

**RETURN RECEIPT REQUESTED**

RECEIVED
ON
SEP 21 07
FIELD ASSURANCE
DAVOL INC.

UNITED STATES POSTAGE
138
7201 $05.38[0] SEP 17 07
2845 MAILED FROM ZIP CODE 78701
PB9964236

DAVOL, Inc., a subsidiary of C.R. BARD, INC.
C/o Any Officer or Authorized Agent
100 Scokanossett Crossroad
Cranston, RI 02920

02920$5539 C041

# EXHIBIT B

EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
Beaumont Division

RUBEN CAVAZOS

Plaintiff,

vs.

C. R. BARD, INC., AND DAVOL INC.

Defendants.

CASE NO. 07cv1394

COMPLAINT FOR PERSONAL INJURIES AND DAMAGES

DEMAND FOR JURY TRIAL

## NATURE OF THE CASE

1. Plaintiff, Ruben Cavazos, developed serious and potentially life-threatening medical conditions caused by the surgical insertion of a defective patch manufactured by Defendants ("Bard® Composix® Kugel® Hernia Patch"). This lawsuit asserts claims for negligence; strict product liability for failure to warn; strict product liability for design defect; and breach of implied warranty against the defendants responsible for the design, manufacture, production, testing, study, inspection, labeling, marketing, advertising, sales, promotion and/or distribution of the patch that caused Mr. Cavazos' medical conditions.

## JURISDICTION AND VENUE

2. This court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §1332 (diversity of citizenship). The matter in controversy in this civil action exceeds the sum or value of $75,000, exclusive of costs and interests, as to each defendant and is between citizens of different states.

3. Venue in this District is proper under 28 U.S.C. §1391. The events and omissions giving rise to this cause of action occurred in substantial part in this District, where defendants transact business.

## THE PARTIES

### Plaintiff

4. At all relevant times plaintiff was a resident and citizen of Harris County, Texas.

**Defendants**

5. Defendant C. R. Bard, Inc., is a New Jersey corporation with its principal place of business in New Providence, Union County, New Jersey and may be served with process through its Vice President and General Counsel to wit:

Stephen J. Long
730 Central Avenue
New Providence, NJ 07974

6. Defendant Davol Inc., is a Delaware corporation with its principal place of business in New Providence, Union County, New Jersey and may be served with process through its Vice President and General Counsel to wit:

Nadia J. Bernstein
730 Central Avenue
New Providence, NJ 07974

**FACTUAL ALLEGATIONS**

**Plaintiff's Injuries**

7. Plaintiff Ruben Cavazos first had the patch implanted on February 16, 2004 as part of a surgery performed to repair an abdominal hernia.

8. On September 20, 2004, Mr. Cavazos had a subsequent surgery to re-attach the patch to the abdominal wall.

9. From November 4, 2004 until he was admitted to the VA hospital in August of 2005, Mr. Cavazos was treated for chronic pain and discharge coming from an infection in the area of the patch.

10. On August 23, 2005 Mr. Cavazos underwent another surgery in an attempt to correct the on going problems associated with the patch.

**Defendants' Misconduct**

11. At all material times, each defendant was responsible for designing, manufacturing, producing, testing, studying, inspecting, mixing, labeling, marketing, advertising, selling, promoting and/or distributing their patch, which was implanted in plaintiff's abdomen.

12. Each defendant had an independent obligation to know, analyze and disclose scientific and medical information about the patch in a timely and adequate manner and to provide warnings about risks and side effects as soon as it was aware of them. Each defendant failed to do so with respect to the patch implanted in to the plaintiff, including by failing to know, analyze and/or disclose defects in the patch.

13. Each defendant made claims regarding the benefits associated with the implantation of the patch and the risks and side effects of the patch. Each defendant knew or should have known that these claims were false and misleading. They failed to adequately disclose the true health consequences and the true risks and side effects of the patch.

14. Each defendant failed to conduct adequate pre-marketing clinical testing and research and failed to conduct adequate post-marketing surveillance, to determine the safety of the patch.

15. Each defendant failed to disclose on their warning labels or elsewhere that adequate pre-marketing clinical testing and research and adequate post-marketing surveillance, had not been done, thereby giving the false impression that the patch had been sufficiently tested.

16. Each defendant knew or should have known that, at all material times, its communications about the benefits, risks and adverse effects of the patch, including communications in labels, advertisements and promotional materials, were materially false and misleading. In the alternative, each defendant was ignorant of whether or not its communications about the patch were true in material ways.

17. Plaintiff would not have agreed to allow the implantation of the patch described herein, had the defendants disclosed the true health consequences, risks and adverse events caused by the patch.

18. Each defendant's nondisclosures and misrepresentations as alleged herein were material and were substantial factors that contributed directly and causally and naturally and necessarily, to the serious injuries and damages that plaintiff has suffered.

19. Each defendant designed, manufactured and marketed the patch, a defective and unreasonably dangerous product.

## FRAUDULENT CONCEALMENT AND DISCOVERY

20. Any applicable statutes of limitations have been tolled by the knowing and active concealment and denial of material facts known by defendants when they had a duty to disclose those facts. They have kept plaintiff ignorant of vital information essential to her pursuit of these claims, without any fault or lack of diligence on plaintiff's part, for the purpose of obtaining delay on plaintiff's part in filing a complaint on her causes of action. Their fraudulent concealment did result in such delay.

21. Plaintiff could not reasonably have discovered the claims made herein until shortly before filing this complaint.

22. The defendants are and were under a continuing duty to disclose the true character, quality and nature of the patch that was implanted in the plaintiff, but instead they concealed them. As a result, defendants are estopped from relying on any statute of limitations defense.

## CLAIMS FOR RELIEF

### First Claim
### (Negligence)

23. Plaintiff realleges all previous paragraphs.

24. Defendants introduced the patch described herein into the stream of commerce.

25. At all material times, defendants had a duty to plaintiff and other consumers of the patch to exercise reasonable care in order to properly design, manufacture, produce, test, study, inspect, label, market, advertise, sell, promote and distribute these products. That includes a duty to warn of side effects and to warn of the risks, dangers and adverse events associated with the patch. Defendants had a similar duty to warn plaintiff's physicians of those factors.

26. Defendants knew, or in the exercise of reasonable care should have known, that the patch was of such a nature that it was not properly designed, manufactured, produced, tested, studied, inspected, labeled, marketed, advertised, sold, promoted and distributed and they were likely to cause injury to those in whom they were implanted.

27. Defendants were negligent in the design, manufacture, production, testing, study,

inspection, labeling, marketing, advertising, sales, promotion and distribution of the patch and breached duties they owed as set forth herein. In particular, defendants:

a. Failed to use due care in the design of the patch to prevent the aforementioned risks to those in whom the patches were implanted;

b. Failed to conduct adequate pre-clinical testing and research to determine the safety of the patch;

d. Failed to conduct adequate post-marketing surveillance to determine the safety of the patch;

e. Failed to accompany their products with proper warnings regarding all possible adverse side effects and complications associated with the use of the patch and the comparative severity and duration of such adverse effects;

f. Failed to use due care in the manufacture of the patch to prevent the aforementioned risks to individuals in whom the patch was implanted;

g. Failed to adequately report adverse events associated the implantation of the patch.

h. Failed to use due care in the inspection of the patch to prevent the aforementioned risks to individuals when the patch was implanted;

i. Failed to use due care in the labeling of the patch to prevent the aforementioned risks to individuals when the patch was implanted;

j. Failed to use due care in the marketing of the patch to prevent the aforementioned risks to individuals when the patch was implanted;

k. Failed to use due care in the promotion of the patch to prevent the aforementioned risks to individuals when the patch was implanted;

l. Failed to use due care in the selling of the patch to prevent the aforementioned risks to individuals when the patch was implanted;

m. Failed to provide adequate information to healthcare providers regarding the risks associated with the implantation of the patch;

n. Failed to adequately warn about the health consequences, risks and adverse events caused by the patch; and

o. Were otherwise careless and negligent.

28. Defendants knew or should have known that the patch caused unreasonable harm and dangerous side effects that many users would be unable to remedy by any means. Despite this, defendants continued to promote and market the patches use by consumers, including plaintiff.

29. It was foreseeable to defendants that consumers, including plaintiff, would suffer injury as a result of defendants' failure to exercise ordinary care as described herein.

30. As a direct and proximate result of defendants' conduct, plaintiff suffered the injuries and damages specified herein.

**Second Claim**
**(Strict Liability: Failure to Warn)**

31. Plaintiff realleges all previous paragraphs.

32. Defendants manufactured and/or supplied the patch described herein and at all material times were in the business of doing so. They placed those products into the stream of commerce. The patch was expected to and did, reach plaintiff without substantial change in its condition.

33. When defendants placed the patch into the stream of commerce, they failed to accompany them with adequate warnings of their dangerous propensities that were either known or reasonably scientifically knowable at the time of manufacture and distribution.

34. Defendants failed to warn plaintiff's physicians and by extension plaintiff, of the true risks and dangers and of the symptoms, scope and severity of the potential complications of the patch.

35. Due to the inadequate warnings as alleged herein, at the time the patch left defendants' hands, it was unreasonably dangerous and defective.

36. Had defendants provided adequate warnings and instructions, plaintiff would not have had the patch implanted and would not have suffered the personal injuries he did.

37. The defect in the product was a producing cause of the injuries and damages specified herein.

**Third Claim**
**(Strict Liability: Design Defect)**

38. Plaintiff realleges all previous paragraphs.

39. Defendants manufactured and/or supplied the patch described herein and at all material times were in the business of doing so. They placed the patch into the stream of commerce. The patch was expected to and did, reach plaintiff without substantial change in its condition.

40. At time the patch left defendants' hands, it was in a condition not contemplated by plaintiff. Specifically, it was defectively designed and unreasonably dangerous as applicable law defines those terms.

41. The patch was dangerous to an extent beyond that which would be contemplated by the ordinary consumer. It was more dangerous than plaintiff contemplated.

42. The risks associated with the use of the patch outweighed its utility.

43. At the time of manufacture, the likelihood the product would cause the plaintiff's harm or similar harms coupled with the seriousness of those harms, outweighed defendants' burden in designing a product that would have prevented those harms.

44. There were practicable and feasible safer alternatives to the defendants' could have produced and sold.

45. The design defects in the product were a producing cause of the injuries and damages specified herein.

**Forth Claim**
**(Breach of Implied Warranty)**

46. Plaintiff re-alleges all previous paragraphs.

47. At the time defendants designed, manufactured, produced, tested, studied, inspected, labeled, marketed, advertised, sold, promoted and distributed the patch for use by plaintiff, they knew of the use for which the patch was intended and impliedly warranted their products to be of merchantable quality and safe and fit for their intended use.

48. Contrary to such implied warranty, the patch was not of merchantable quality, was not safe and/or was not fit for its intended use. It was unreasonably dangerous and unfit for the ordinary purposes for which they were used, as alleged herein. Defendants failed to warn of known or reasonably scientifically knowable defects in the patch.

49. As a direct and proximate result of defendants' conduct, plaintiff suffered the injuries and damages specified herein.

**PRAYER FOR RELIEF**

WHEREFORE, plaintiff seeks judgment against the defendants, jointly and severally, as follows:

1. Economic and non-economic damages in an amount in excess of $75,000 as to each defendant as provided by law and to be supported by the evidence at trial;

2. An award of attorneys' fees and costs of suit, if allowed by law; and

3. Such other legal and equitable relief as this Court deems just and proper.

**JURY DEMAND**

Plaintiff requests a trial by jury.

Dated: April 24, 2007

Respectfully submitted,

PROVOST ★ UMPHREY LAW FIRM, L.L.P.

By: ______________________________

Christopher T. Kirchmer
Texas Bar No. 00794099
P.O. Box 4905
Beaumont, TX 77704
Tel: (409) 835-6000
Fax: (409) 813-8612

# EXHIBIT C

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF FLORIDA**
**PENSACOLA DIVISION**

EXHIBIT C

NEIL MONTGOMERY, JR. and STORMI MONTGOMERY,

Plaintiff,

v.

DAVOL, INC.; and
C.R. BARD, INC.

Defendant.

Case No: 3:07cv176-RV/EMT

**COMPLAINT AND JURY DEMAND**

**Complaint**

1. Plaintiffs, NEIL MONTGOMERY, JR. and STORMI MONTGOMERY are citizens and residents of the County of Escambia, State of Florida. Hereinafter, Plaintiff Neil Montgomery, Jr. will be referred to as "Plaintiff" and Plaintiff Stormi Montgomery will be referred to as "Plaintiff Stormi Montgomery".

2. Defendant, DAVOL INC. ("DAVOL") is a corporation that is incorporated under the laws of the State of Rhode Island. DAVOL has its principal place of business in the State of Rhode Island. It manufactures the Composix® Kugel Mesh Patches ("Kugel Patch") at 100 Sockanosset Crossroad, Cranston, Rhode Island. DAVOL has a registered agent in Rhode Island at CT Corporation System, 10 Weybosset St., Providence, Rhode Island. DAVOL focuses its business on products in key surgical specialties, including hernia repair, hemostasis, orthopedics, and laparoscopy.

3. Defendant, C. R. BARD INC. ("BARD") is a corporation that is incorporated under

OFFICE OF CLERK
U.S. DISTRICT CT.
NORTHERN DIST. FLA.
PENSACOLA, FLA.

07 APR 20 AM 10: 38

FILED

the laws of the State of New Jersey. It is the corporate parent/stockholder of DAVOL and participates in the manufacture and distribution of the Kugel Patch. It also manufactures and supplies DAVOL with material that forms part of the Kugel Patch. BARD at all times relevant did substantial and continuous business in the State of Rhode Island.

## Jurisdiction and Venue

4. The Court has jurisdiction over this action because the claim is valued at more than $75,000, and there is complete diversity of citizenship.

5. Venue is proper in this District under 28 U.S.C. § 1391(a) because Defendants reside, transact business, or are found within this District, and a substantial part of the events giving rise to the claims arose in the District.

## Facts

6. Defendant DAVOL designed, manufactured and distributed the Kugel Patch, a hernia mesh patch that was inserted into the Plaintiff's body.

7. Defendant DAVOL, through its agents, servants and employees, participated in the manufacture and delivery of the Kugel Patch that was inserted into Plaintiff's body.

8. The Defendants submitted their 510k Application to the Federal Drug Administration (hereinafter referred to as the "FDA") on January 22, 2001. Following this 510k Application, the Kugel Patch was authorized by the FDA as a Class II medical device.

9. On April 4, 2006, Plaintiff underwent surgery at Naval Hospital Pensacola to repair an incisional hernia. A 5.4" x 7.0" Kugel Patch (Reference No. 0010202; Lot No. 43AOD063) was

used to repair the defect. The operative report says that "numerous staples were utilized firmly anchoring the patch in place."

10. The Kugel Patch hernia repair product implanted in Plaintiff was designed, manufactured, sold and distributed by DAVOL to be used by surgeons for hernia repair surgeries and was further represented by DAVOL to be an appropriate, cost-effective and suitable product for such purpose.

11. In the months that followed the surgery, Plaintiff developed abdominal tenderness and severe pain at the site of his incisional hernia repair. A CAT scan was carried out and confirmed that Plaintiff was suffering from a broken mesh and recurrent hernia.

12. A FDA Class I recall is issued for problems related to medical devices that are potentially life-threatening or could cause a serious risk to health.

13. On December 22, 2005, DAVOL recalled many sizes of Kugel Patches under a FDA Class I recall notice.

14. The Kugel Patch was recalled due to a faulty "memory recoil ring" that can break under pressure. Incidents of ring migration, intestinal fistulae, bowel perforation and even death related to the Kugel Patch have been reported.

15. On March 31, 2006, the initial Class I recall on the Kugel Patch was expanded to include the type of Kugel Patch used in Plaintiff's ventral hernia repair.

16. In or around March 2007, Plaintiff learned for the first time that the hernia repair mesh implanted in him on April 4, 2006 was a defective Kugel Mesh and was part of a national recall.

17. Plaintiff has suffered and will continue to suffer physical pain and mental anguish.

18. Plaintiff has incurred substantial medical bills, and has lost wages.

19. DAVOL and BARD withdrew a large number of Kugel Patches as a result of the high complication and failure rate of the product.

20. Upon information and belief, DAVOL and BARD failed to comply with the FDA application and reporting requirements.

21. Upon information and belief, DAVOL and BARD were aware of the high degree of complication and failure rate associated with their Kugel Patch before it was recalled.

22. Upon information and belief, DAVOL and BARD were aware of the defect in manufacture and design prior to the recall of their Kugel Patch.

**<u>COUNT I</u>**

**Negligence**

23. Plaintiff re-alleges and incorporates by reference each and every allegation contained in paragraphs 1-22 as though fully set forth herein:

24. Defendants DAVOL and BARD were negligent to Plaintiff in the following respects:

25. DAVOL and BARD at all times mentioned had a duty to properly manufacture, test, inspect , package, label, distribute, market, examine, maintain, supply, provide proper warnings and prepare for use in the general public, the Kugel Patch.

26. DAVOL and BARD at all times mentioned knew or in the exercise of reasonable care should have known, that the Kugel Patches were of such a nature that they were not properly manufactured, tested, inspected, packaged, labeled, distributed, marketed, examined, sold supplied, prepared and/or provided with the proper warnings, and were reasonably likely to injure Kugel Patch

users.

27. DAVOL and BARD negligently and carelessly designed, manufactured, tested, inspected, packaged, labeled, distributed, recommended, displayed, sold, examined and/or supplied the Kugel Patch such that the product was dangerous and unsafe for the use and purpose for which it was intended.

28. DAVOL and BARD were aware of the probable consequences of the Kugel Patch. DAVOL and BARD knew or should have known the Kugel Patch would cause serious injury; they failed to disclose the known or knowable risks associated with the Kugel Patch. DAVOL and BARD willfully and deliberately failed to avoid those consequences, and in doing so, they acted in conscious disregard of the safety of Plaintiff.

29. Defendants DAVOL and BARD owed a duty to Plaintiff to adequately warn him and his treating physicians, of the risks of breakage, separation, tearing and splitting associated with the Kugel Patch and the resulting harm and risk it would cause patients.

30. Defendants DAVOL and BARD breached their duty by failing to comply with state and federal regulations concerning the study, testing, design, development, manufacture, inspection, production, advertisement, marketing, promotion, distribution, and/or sale of the Kugel Patch.

31. As a direct and proximate result of the duties breached, the Kugel Patch used in Plaintiff's hernia repair surgery failed, resulting in Plaintiff suffering pain and harm.

32. As a direct and proximate result of DAVOL's and BARD's negligence, Plaintiff has suffered injuries and damages.

33. DAVOL's and BARD's conduct in continuing to market, sell and distribute the Kugel Patch after obtaining knowledge they were failing and not performing as represented and intended,

showed complete indifference to or a conscious disregard for the safety of others justifying an award of additional damages for aggravating circumstances in such a sum which will serve to deter DAVOL, BARD and others from similar conduct in the future.

**Wherefore,** Plaintiff requests a judgment against DAVOL and BARD for damages in a sum to confer jurisdiction upon this Court together with interest on that amount at the legal rate from the date of judgment until paid, for court costs and for other such relief this Court deems just and appropriate.

**COUNT II**

**Loss of Consortium**

34. Plaintiff hereby incorporates and realleges the General Allegations, paragraphs 23 through 33, as if fully set forth herein.

35. Plaintiff Stormi Montgomery is and at all times relevant hereto has been the lawful spouse of Plaintiff, and as such, she is entitled to the comfort and enjoyment of her society and services.

36. As a direct and proximate result of the foregoing misconduct of the Defendants, Plaintiff Stormi Montgomery has been deprived of her spouse's companionship, services, solace, consortium, affection and attention to which she is entitled.

37. As a result of the foregoing, Plaintiff Stormi Montgomery has been and will continue to be injured and damaged.

Wherefore, Plaintiff demands judgment for all damages available to her under the law as a result of the Defendants' conduct as alleged herein and such other relief as this Court deems just and appropriate.

Case 3:07-cv-00176-RV-EMT Document 1 Filed 04/20/2007 Page 7 of 14

## COUNT III

### Strict Product Liability

38. Plaintiff re-alleges and incorporates by reference each and every allegation contained in paragraphs 23-37 as though fully set forth herein.

39. Defendants DAVOL and BARD are strictly liable to Plaintiff in the following respects: DAVOL and BARD designed, manufactured, assembled, distributed, conveyed and/or sold the Kugel Patch for hernia repair surgery; the Kugel Patches subject to the Class I recall were defective because they failed to perform safely and effectively for the purpose they were originally designed. Plaintiff's Kugel Patch was a Class I recalled device that failed while in his body, causing him to develop serious physical complications, which will require subsequent, painful and unnecessary removal surgery of his Kugel Patch; at all times mentioned, the Kugel Patch was substantially in the same condition as when it left the possession of DAVOL; and the Kugel Patch implanted into Plaintiff was being used in a manner reasonably anticipated at the time it was implanted in him by his surgeon.

40. Furthermore, the Kugel Patches, like the one found in Plaintiff, at the time they left the possession of DAVOL and BARD were inherently dangerous for their intended use and were unreasonably dangerous products which presented and constituted an unreasonable risk of danger and injury to Plaintiff as follows:

i. The Kugel Patch was sold in a defective condition by design and manufacture;

ii. The Kugel Patch as designed and manufactured was unsafe to

Plaintiff;

iii. The Kugel Patch as designed and manufactured was unreasonably dangerous to Plaintiff;

iv. The Kugel Patch did not perform safely as an ordinary consumer/patient, like Plaintiff, would expect;

v. The Kugel Patch as designed and manufactured was unsafe for its intended use;

vi. DAVOL and BARD failed to warn the end user about the dangers and risks of the product;

vii. DAVOL and BARD knew the component parts of the Kugel Patch as implemented through design and/or manufacture could cause injury to the end user;

viii. Failing to implement an adequate, safe and effective "memory recoil ring" and/or its interaction with the mesh of the Kugel Patch to withstand the foreseeable stresses they would be subject to within the intra-abdominal space;

ix. Failing to avoid migration of the Kugel Patch and/or its components from the initial site of the hernia repair surgery.

x. Any other acts or failures to act by DAVOL or BARD regarding the studying, testing, designing, developing, manufacturing, inspecting, producing, advertising, marketing, promoting, distributing, and/or

sale of Kugel Patches for hernia repair surgery as will be learned during discovery.

41. DAVOL's and BARD's conduct in continuing to market, sell and distribute the Kugel Patch after obtaining knowledge they were failing and not performing as represented and intended, showed complete indifference to or a conscious disregard for the safety of others justifying an award of additional damages for aggravating circumstances in such a sum which will serve to deter DAVOL, BARD and others from similar conduct in the future.

**Wherefore,** Plaintiff requests a judgment against DAVOL and BARD for damages in a sum as permitted by statute together with interest on that amount at the legal rate from the date of judgment until paid, for court costs and for other such relief this Court deems just and appropriate.

## COUNT IV

### Negligent Infliction of Emotional Distress

42. Plaintiff re-alleges and incorporates by reference each and every allegation contained in paragraphs 23-41 as though fully set forth herein.

43. Defendants DAVOL and BARD are liable to Plaintiff for the negligent infliction of emotional distress in the following respect: Plaintiff suffered severe emotional distress, which was as a result of Defendant's negligent conduct in studying, designing, developing, testing, inspecting, manufacturing, producing, advertising, marketing, promoting, distributing, and/or selling of the Kugel Patch for hernia repair surgery.

44. Plaintiff suffered severe emotional distress, which was as a result of DAVOL's and BARD's negligent conduct in failing to adequately and safely design and construct an effective and safe Kugel Patch for hernia repair surgery.

45. Therefore, DAVOL and BARD are liable to Plaintiff.

46. DAVOL's and BARD's conduct in continuing to market, sell and distribute the Kugel Patch after obtaining knowledge they were failing and not performing as represented and intended, showed complete indifference to or a conscious disregard for the safety of others justifying an award of additional damages for aggravating circumstances in such a sum which will serve to deter DAVOL, BARD and others from similar conduct in the future.

**Wherefore,** Plaintiff requests a judgment against DAVOL and BARD for damages in a sum to confer jurisdiction upon this Court together with interest on that amount at the legal rate from the date of judgment until paid, for court costs and for other such relief this Court deems just and appropriate.

## COUNT V

### Intentional Infliction of Emotional Distress

47. Plaintiff re-alleges and incorporates by reference each and every allegation contained in paragraphs 23-46 as though fully set forth herein.

48. Defendants DAVOL and BARD are liable to Plaintiff for the intentional infliction of emotional distress in the following respect:Plaintiff suffered severe emotional distress, which was as a result of DAVOL's and BARD's extreme outrageous, intentional, willful, and reckless conduct in studying, designing, developing, testing, inspecting, manufacturing, producing, advertising, marketing, promoting, distributing, and/or sale of the Kugel Patch for hernia repair surgery.

49. Plaintiff suffered severe emotional distress, which was as a result of DAVOL's and BARD's extreme outrageous, intentional, willful, and reckless conduct in failing to adequately and safely design and construct an effective and safe Kugel Patch for hernia repair surgery, in complete

and reckless disregard of safety to Plaintiff.

50. Therefore, DAVOL and BARD are liable to Plaintiff.

51. DAVOL's and BARD's conduct in continuing to market, sell and distribute the Kugel Patch after obtaining knowledge they were failing and not performing as represented and intended, showed complete indifference to or a conscious disregard for the safety of others justifying an award of additional damages for aggravating circumstances in such a sum which will serve to deter DAVOL, BARD and others from similar conduct in the future.

**Wherefore,** Plaintiff requests a judgment against DAVOL and BARD for damages in a sum to confer jurisdiction upon this Court together with interest on that amount at the legal rate from the date of judgment until paid, for court costs and for other such relief this Court deems just and appropriate.

## COUNT VI

### Breach of Implied Warranty

52. Plaintiff re-alleges and incorporates by reference each and every allegation contained in paragraphs 23-51 as though fully set forth herein.

53. Defendants DAVOL and BARD are liable to Plaintiff for their breach of implied warranty in the following respect: DAVOL and BARD sold the Kugel Patch, which was implanted in Plaintiff. DAVOL and BARD impliedly warranted to Plaintiff, his physicians and health care providers, that the Kugel Patch was of merchantable quality and safe for the use for which it was intended.

54. DAVOL and BARD knew or should have known that the Kugel Patch at the time of sale was intended to be used for the purpose of surgically implanting them into the body for hernia repair.

55. Plaintiff, his physicians and health care providers reasonably relied on DAVOL's and

BARD's judgment, indications and statements that the Kugel Patch was fit for such use.

56. When the Kugel Patches were distributed into the stream of commerce and sold by DAVOL and BARD, they were unsafe for their intended use, and not of merchantable quality, as warranted by DAVOL and BARD in that they had very dangerous propensities when used as intended and implanted into a patient's body where they could cause serious injury of harm or death to the end user.

57. Plaintiff suffered such injuries and damages as a result of DAVOL and BARD's conduct and actions.

**COUNT VII**

**Failure to Warn**

58. Plaintiff re-alleges and incorporates by reference each and every allegation contained in paragraphs 23-57 as though fully set forth herein.

59. In the course of business, DAVOL and BARD designed, manufactured and sold the Kugel Patch to Naval Hospital of Pensacola for hernia repair surgeries.

60. At the time of the design, manufacture and sale of the Kugel Patch, and more specifically at the time Plaintiff received the Kugel Patch, it were defective and unreasonably dangerous when put to it's intended and reasonably anticipated use. Further, the Kugel Patche was not accompanied by proper warnings regarding significant adverse consequences associated with the Kugel Patch.

61. BARD and DAVOL failed to provide any warnings, labels or instructions of its dangerous propensities that were known or reasonably scientifically knowable at the time of distribution. The reasonably foreseeable use of the product involved significant dangers not readily obvious to the ordinary user of the product. BARD and DAVOL failed to warn of the known or

knowable injuries associated with malfunction of the Kugel Patch, including but not limited to rupture of the Patch and severe peritonitis and infection which would require subsequent surgical procedures and could result in severe injuries.

62. The dangerous and defective conditions in the Kugel Patch existed at the time they were delivered by the manufacturer to the distributor. At the time Plaintiff had his hernia repair surgery the Kugel Patch was in the same condition as when manufactured, distributed and sold.

63. Plaintiff did not know at the time of use of the Kugel Patch, nor at any time prior thereto, of the existence of the defects in the Kugel Patch.

64. Plaintiff suffered the aforementioned injuries and damages as a direct result of DAVOL and BARD's failure to warn.

65. The conduct of BARD and DAVOL in continuing to market, promote, sell and distribute the Kugel Patch after obtaining knowledge that the products were failing and not performing as represented and intended, showed a complete indifference to or conscious disregard for the safety of others justifying an award in such sum which will serve to deter BARD, DAVOL and others from similar conduct.

**Wherefore,** Plaintiff respectfully requests judgment in his favor and against DAVOL and BARD for such amount that is determined to be fair and reasonable, for such other relief as may be fair and reasonable under the circumstances and for his costs.

Dated this 19th day of April, 2007.

**A TRIAL BY JURY IS REQUESTED ON ALL COUNTS.**

Plaintiff, NEIL MONTGOMERY, JR.,
By his Attorneys,

R. Jason Richards
FL Bar # 0018207
Neil D. Overholtz
FL Bar #0188761
Aylstock, Witkin, Kreis & Overholtz, PLLC
4400 Bayou Boulevard, Ste 58A
Pensacola, Florida 32503
Phone: (850) 916-7450
Facsimile: (850) 916-7449
jrichards@awkolaw.com
noverholtz@awkolaw.com